**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARCHITECTURAL IRON WORKERS' LOCAL NO. 63 WELFARE FUND, ARCHITECTURAL IRON WORKERS' LOCAL NO. 63 DEFINED CONTRIBUTION PENSION FUND, and ARCHITECTURAL METAL TRAINEE SCHOOL FOR LOCAL NO. 63 AND THE IRON LEAGUE OF CHICAGO, INC, | ) | CIVIL ACTION |
| *Plaintiffs,* | ) | Case No. 26-cv-10903 |
| v. | ) | |
| D.S.FENCE COMPANY, | ) | |
| *Defendant.* | ) | |

**<u>DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT</u>**

NOW COMES Defendant, D.S.FENCE COMPANY, by and through its undersigned Counsel, Allocco, Miller & Cahill, P.C., and for its Answer to the Complaint of Plaintiffs, states as follows:

**NATURE OF THE ACTION**

1. The Funds bring this action under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145. They also sue under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Funds seek the fringe benefit contributions and wages DS Fence owes under its collective bargaining agreement with Architectural & Ornamental Iron Workers Local Union No. 63 ("Local 63").

**<u>ANSWER</u>**: Defendant admits the allegations in Paragraph 1.

2. DS Fence signed with Local 63 in October 2022 and then paid its ironworkers off the books. It kept no timekeeping records and no payroll records showing the hours its employees worked. It issued no W-2s and no 1099s. It paid workers in cash, by check, and through Zelle, and it reported almost none of those hours to the Funds. A payroll compliance audit reconstructed the company's payroll from its bank records. The audit found $725,927.24 in unpaid contributions and $264,570.30 in wages paid below the contract rate. With interest, liquidated damages, and audit costs, DS Fence owes $1,264,549.10.

**ANSWER**: Defendant admits it signed with Local 63 in October 2022, that it kept no timekeeping or payroll records, that it issued no W-2s nor 1099s, and that it paid workers by cash, check, and Zelle, and denies the remaining allegations in Paragraph 2.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction under Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. § 1132(e)(1) and (f). Jurisdiction also lies under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under 28 U.S.C. § 1331.

**ANSWER**: Defendant admits the allegations in Paragraph 3.

4. Section 515 of ERISA, 29 U.S.C. § 1145, requires an employer that must contribute to a multiemployer plan under a collectively bargained agreement to do so in accordance with that agreement. Section 502(g)(2), 29 U.S.C. § 1132(g)(2), directs the Court to award a prevailing plan the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs.

**ANSWER**: Defendant admits the allegations in Paragraph 4.

5. Venue lies in this district under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b). The Funds are administered in Oak Brook, Illinois. DS Fence maintains its principal place of business at 25674 West Obermaier Lane, Lake Villa, Illinois, and performed the covered work at issue in this district.

**ANSWER**: Defendant admits the allegations in Paragraph 5.

## THE PARTIES

6. The Funds are jointly administered, ERISA-governed multiemployer employee benefit plans within the meaning of 29 U.S.C. §§ 1002(1), 1002(2), 1002(3), and 1002(37). They were established and are maintained under Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). Each Fund is affiliated with Local 63 and is administered under a written Agreement and Declaration of Trust.

**ANSWER**: Defendant admits the allegations in Paragraph 6.

7. The Funds bring this action in their own right and through their Trustees, who are fiduciaries under 29 U.S.C. § 1002(21)(A). Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1), permits an employee benefit plan to sue as an entity.

**ANSWER**: Defendant admits the allegations in Paragraph 7.

8. DS Fence is a fence contractor with its principal place of business in Lake Villa, Illinois. It is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), 152(6), 152(7), 1002(5), 1002(11), and 1002(12). It is also an employer obligated, within the meaning of 29 U.S.C. § 1145, to contribute to the Funds.

**ANSWER**: Defendant admits the allegations in Paragraph 8.

## FACTUAL ALLEGATIONS

9. On October 25, 2022, DS Fence executed a Memorandum of Agreement (Fence Industry) with Local 63 (Ex. A). Roberto Urquiza signed it as the company's Owner.

**ANSWER**: Defendant admits the allegations in Paragraph 9.

10. The Memorandum of Agreement bound DS Fence to the Local 63 fence industry collective bargaining agreement in full. Under Paragraph 1, "[t]he Employer hereby accepts and becomes bound as a party to the Agreement in its entirety, which is incorporated by reference as if set forth fully herein." Paragraph 1 also binds DS Fence "by any subsequent successors, renewals, amendments, modifications, replacements and addenda to the Agreement unless this acceptance agreement is timely terminated . . . ." (Ex. A, ¶ 1). DS Fence never terminated the Memorandum of Agreement.

**ANSWER**: Defendant admits the allegations in Paragraph 10.

11. The agreement DS Fence adopted is the Fence Agreement between the Fence Contractors Association of Greater Chicago, Inc. and Local 63 (the "CBA") (Ex. B). The CBA's stated term ran from June 1, 2020, through May 31, 2025. Section 29.1 continues the CBA for an additional year absent timely written notice of a desire to change or terminate it (Ex. B, p. 36). Paragraph 1 of the Memorandum of Agreement separately binds DS Fence to every successor, renewal, and modification of the CBA. DS Fence remained bound throughout the audit period, and the contribution rates it owed rose on June 1, 2025, under the parties' successor terms.

**ANSWER**: Defendant admits the allegations in Paragraph 11.

12. The CBA covers the erection, repair, maintenance, and removal of chain link and other fencing and the associated work described in Section 1.1 (Ex. B, pp. 1-2). Section 2.1 requires that "[a]ll work within the trade jurisdiction of the Union which the Employer undertakes to perform with its employees shall be performed by employees covered by this Agreement." (Ex. B, pp. 2-3). DS Fence performed that work throughout the audit period.

**ANSWER**: Defendant admits the allegations in Paragraph 12.

13. Article 20 of the CBA obligates DS Fence to contribute to the Funds for every hour worked by a covered employee (Ex. B, pp. 25-27). Section 20.1 requires payment into the Welfare Plan. Section 20.3 requires payment into the Defined Contribution Pension Trust fund. Section 20.5 requires payment to the Board of Trustees of the Architectural Metal Trainee School. The CBA fixes a per-hour rate for each fund for the first contract year. It then provides an annual increase that Local 63 allocates among wages and the funds under Section 7.2 (Ex. B, pp. 10-11).

**ANSWER**: Defendant admits the allegations in Paragraph 13.

14. Section 20.6 requires that payments "be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees." (Ex. B, p. 27). DS Fence reported hours and paid contributions to the Funds through monthly remittance reports listing each covered employee and the hours worked. further. It binds DS Fence "to the Agreements and Declarations of Trust creating each of said trust funds" as if DS Fence had signed the trust instruments itself (Ex. A, ¶ 3). The Memorandum of Agreement, the CBA, and the Agreements and Declarations of Trust are together the "Governing Agreements."

**ANSWER**: Defendant admits the allegations in Paragraph 14.

15. The CBA binds DS Fence to the trust instruments that create the Funds. Section 20.7 provides that "[t]he Agreements and Declarations of Trusts for the Health and Welfare Plan, Pension Plan and Defined Contribution Plan are made a part of this Agreement as if set forth herein at length." (Ex. B, p. 27). Section 20.4 binds DS Fence to those trust agreements and to all present and future amendments (Ex. B, p. 26). Paragraph 3 of the Memorandum of Agreement reaches further. It binds DS Fence "to the Agreements and Declarations of Trust creating each of said trust funds" as if DS Fence had signed the trust instruments itself (Ex. A, ¶ 3). The Memorandum of Agreement, the CBA, and the Agreements and Declarations of Trust are together the "Governing Agreements."

**ANSWER**: Defendant admits the allegations in Paragraph 15.

16. Section 20.9 makes a contractual violation out of an employer's failure, "after reasonable notice by Trustees of each of the plans above named, to furnish reports, pay contributions or comply with the rules and regulations formulated by said Trustees." (Ex. B, pp. 27-28). The Trustees gave DS Fence that notice through the audit report and the written demand described below.

**ANSWER**: Defendant admits the allegations in Paragraph 16.

17. Section 20.10 sets the consequences of delinquency (Ex. B, p. 28). A delinquent employer must pay, on top of the amount due, "reasonable fees of Certified Public Accounts as expressly used to establish the amount due" and "reasonable fees of attorney effectuating payments." It must also pay "interest and liquidated damages in amounts as determined in accordance with the Agreements and Declaration of Trust and the rules of the Trustees thereof."

**ANSWER**: Defendant admits the allegations in Paragraph 17.

18. Section 7.4 gives Local 63 the right to inspect DS Fence's payroll records to determine compliance with the CBA's wage and contribution provisions (Ex. B, pp. 11-12). DS Fence must make its books and records available to "a representative of a certified public accountant designated by the Union." Where the audit reveals violations, "the cost of the audit shall be borne by the Employer." Section 20.8 separately obligates DS Fence to give the Trustees "such other information as may be required" to administer the plans. Section 20.10 charges a delinquent employer with the accountants' fees "used to establish the amount due." The Agreements and Declarations of Trust impose a parallel audit obligation running to the Trustees.

**ANSWER**: Defendant admits the allegations in Paragraph 18.

19. The CBA also fixes what DS Fence must pay its workers. Section 7.1 provides that covered employees "shall be classified and receive wages and fringe benefits" at the rates the CBA sets (Ex. B, p. 8). Section 9.1 provides that all Architectural and Ornamental Iron Worker Journeymen performing work under the CBA "shall receive the wages and fringes as provided for Fence Erector in this Agreement." (Ex. B, p. 14).

**ANSWER**: Defendant admits the allegations in Paragraph 19.

20. The Section 7.1 rate table also requires DS Fence to contribute to the IMPACT Fund for every hour worked (Ex. B, p. 9). The same table requires DS Fence to deduct from each covered employee's wages, and remit, amounts for the Vacation Fund, the Retiree Fund, General Organizing, IPAL, and the Union Working Assessment. Section 26.1 requires DS Fence to remit the working assessment monthly on the same form it uses to report Welfare and Pension contributions (Ex. B, p. 33). The audit report labels the IMPACT Fund the Local Impact Fund.

**ANSWER**: Defendant admits the allegations in Paragraph 20.

21. On the same day it signed the Memorandum of Agreement, DS Fence deposited $15,000.00 with Amalgamated Bank of Chicago in Money Market Account No. 598172575 (Ex. C). The deposit secured the payment of wages and fringe benefits. DS Fence assigned the account to Local 63 and to the Trustees of the Funds under a written Security Deposit Agreement. It authorized withdrawal upon its default in paying wages or fringe benefits.

**ANSWER**: Defendant admits the allegations in Paragraph 21.

22. The Funds referred DS Fence for a payroll compliance audit covering October 25, 2022, forward and engaged Calibre CPA Group, PLLC ("Calibre") to perform it.

**ANSWER**: Defendant admits the allegations in Paragraph 22.

23. DS Fence had almost nothing to audit. It kept no timekeeping records and no payroll records showing the hours its employees worked. It issued no W-2s and no 1099s to the people who worked for it. Its records consisted of bank statements, canceled checks, Zelle transaction histories, invoices, and the certified payroll reports it filed on public work.

**ANSWER**: Defendant denies it had almost nothing to audit and admits the remaining allegations in Paragraph 23.

24. With no source records to test, Calibre reconstructed DS Fence's payroll from its bank statements, canceled checks, Zelle transaction records, invoices, and certified payrolls.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25. Calibre completed the audit on May 7, 2026, and issued its report for the period October 25, 2022, through December 31, 2025 (Ex. D). The audit found that DS Fence underreported the hours worked by the employees it did report and never reported other employees at all. Five of the eleven employees the audit identified had never appeared on a DS Fence remittance report.

**ANSWER**: Defendant admits Calibre completed the audit on May 7, 2026 and issued its report for the period October 25, 2022, through December 31, 2025 and denies the remaining allegations in Paragraph 25.

28. The audit found $725,927.24 in unpaid contributions, allocated among the Funds and the other Local 63 fringe benefit accounts as follows:

| | |
|---|---|
| Welfare Fund | $378,081.95 |
| Defined Contribution Pension Fund | $191,029.30 |
| Apprenticeship Fund (Trainee School) | $21,562.07 |
| Vacation Fund | $74,789.30 |
| Working Assessment | $40,604.60 |
| Local Impact Fund | $8,475.40 |
| Retiree Fund | $5,482.40 |
| General Organizing | $5,079.63 |
| IPAL | $822.59 |
| ***Total Unpaid Contributions*** | **$725,927.24** |

**ANSWER**: Defendant denies the allegations in Paragraph 28.

29. Interest on the unpaid Welfare Fund and Defined Contribution Pension Fund contributions, computed at 18 percent per annum compounded monthly through May 7, 2026, totals $212,307.40. Interest continues to accrue.

**ANSWER**: Defendant denies the allegations in Paragraph 29.

30. Liquidated damages assessed under the Agreements and Declarations of Trust and the Trustees' collection rules total $58,074.18, which is 8 percent of the unpaid contributions. Section 502(g)(2)(C) of ERISA entitles the Funds to the greater of that amount or the interest awarded on the contributions.

**ANSWER**: Defendant admits the allegations in Paragraph 30.

31. Calibre's invoice number 299565, dated May 7, 2026, bills the Funds $3,669.98 for the audit.

**ANSWER**: Defendant admits the allegations in Paragraph 31.

32. The audit separately determined that DS Fence paid its ironworkers less than the CBA rates. DS Fence paid a flat $37.50 per hour. The CBA rates the auditor applied ran from $38.25 to $52.25 depending on the worker's classification and the year. Eleven identified workers were underpaid, along with 2,259.50 hours the auditor could trace only to cash payments. Those workers are owed $264,570.30.

**ANSWER**: Defendant admits that the audit separately determined that D.S.Fence paid its ironworkers less than CBA rates and that such rates ran from $38.25 to $52.25 depending on the worker's classification and the year, and denies the remaining allegations in Paragraph 32. Defendant specifically denies that it paid ironworkers less than CBA rates.

32. On May 26, 2026, counsel for the Funds demanded payment in writing and enclosed the audit report. The letter gave DS Fence 14 days to pay or to submit a written, fact-based challenge with supporting documentation.

**ANSWER**: Defendant admits the allegations in Paragraph 32.

33. On May 26, 2026, counsel for the Funds demanded payment in writing and enclosed the audit report. The letter gave DS Fence 14 days to pay or to submit a written, fact-based challenge with supporting documentation.

**ANSWER**: Defendant admits the allegations in Paragraph 33.

34. On June 3, 2026, counsel for the Funds served Amalgamated Bank of Chicago with a notice of default under the Security Deposit Agreement. Counsel demanded withdrawal of the full account balance. The Bank complied. The Funds recovered $15,000.00, which leaves $1,249,549.10 outstanding.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35. DS Fence has paid nothing beyond the security deposit the Funds withdrew themselves.

**ANSWER**: Defendant denies the allegations in Paragraph 35.

**COUNT I**
**ERISA (29 U.S.C. §§ 1132 and 1145)**

36. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35.

**ANSWER**: Defendant restates its answers to Paragraphs 1 through 35.

37. DS Fence is an employer obligated, within the meaning of 29 U.S.C. § 1145, to contribute to the Funds under the terms of a collectively bargained agreement.

**ANSWER**: Defendant admits the allegations in Paragraph 37.

38. Section 515 of ERISA requires DS Fence to make those contributions in accordance with the Governing Agreements.

**ANSWER**: Defendant admits the allegations in Paragraph 38.

39. DS Fence failed to report the hours its employees worked and failed to pay the contributions those hours generated. For the period October 25, 2022, through December 31, 2025, it owes the Funds $590,673.32 in unpaid contributions.

**ANSWER**: Defendant denies the allegations in Paragraph 39.

40. The Funds have performed every obligation the Governing Agreements impose on them.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40

41. DS Fence's failure to pay has deprived the Funds of the contributions they need to provide benefits to participants and beneficiaries. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), entitles the Funds to the unpaid contributions, interest, liquidated damages, audit costs, and reasonable attorneys' fees and costs.

**ANSWER**: Defendant denies the allegations in Paragraph 41.

## COUNT II
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT
## (29 U.S.C. § 185)

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35.

**ANSWER**: Defendant restates its answers to Paragraphs 1 through 35.

43. The Memorandum of Agreement and the CBA are contracts between an employer and a labor organization in an industry affecting commerce. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, governs them.

**ANSWER**: Defendant admits the allegations in Paragraph 43.

44. The Funds are third-party beneficiaries of those contracts and may enforce them under Section 301.

**ANSWER**: Defendant admits the allegations in Paragraph 44.

45. The CBA requires DS Fence to contribute to the Local Impact Fund for every hour its covered employees work. It also requires DS Fence to deduct and remit amounts for the Vacation Fund, the Union Working Assessment, the Retiree Fund, General Organizing, and IPAL. DS Fence failed to report the hours, failed to contribute, and failed to deduct and remit. It owes $135,253.92 on those accounts.

**ANSWER**: Defendant denies owing $135,253.92 and admits the remaining allegations in Paragraph 45.

46. Sections 7.1 and 9.1 of the CBA require DS Fence to pay covered employees the wage rates the CBA sets. DS Fence paid eleven identified workers a flat $37.50 per hour against contract rates running as high as $52.25. Urquiza admitted to the Funds' counsel that from October 2022 through October 2024 he paid Local 63 members on residential work below the CBA rates. Those workers are owed $264,570.30.

**ANSWER**: Defendant denies the amounts owed and admits remaining allegations in Paragraph 46.

47. DS Fence's failure to pay contributions and contract wages breached the CBA and damaged the Funds and the workers who performed covered work.

**ANSWER**: Defendant denies it failed to pay the contract wages and admits the remaining allegations in Paragraph 47.

Dated: October 9, 2026

Respectfully submitted,

**DS FENCE COMPANY**

By: /s/ Todd A. Miller
Attorney for Defendant

Todd A. Miller (ARDC #6216561)
Kathleen M. Cahill (ARDC #6269486)
**Allocco, Miller, & Cahill P.C.**
*Attorney for Defendant*
20 North Wacker Drive, Suite 3517
Chicago, IL 60606
Telephone: (312) 675-4325
Fax: (312) 675-4326
tam@alloccomiller.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on today's date, **October 9, 2026**, he electronically filed the attached, **Defendant's Answer to Plaintiff's Complaint**, with the Clerk of the Court using the CM/ECF system which will send notice of such filings to the following:

Attorneys for Plaintiffs:

Gregory W. Hosé
Andrew Pigott
Kyle Sullivan (ARDC No.: 6336828)
Kay Han
**Gregorio, Stec, Klein, & Hosé, LLC**
2 N. LaSalle St., Suite 1650
Chicago, IL 60602
Phone: (312) 263-2343
Email: ksullivan@gregoriolaw.com

/s/ Todd A. Miller

Attorneys for Defendant:

Todd A. Miller (ARDC #6216561)
Kathleen M. Cahill (ARDC #6269486)
**Allocco, Miller, & Cahill P.C.**
*Attorney for Defendant*
20 North Wacker Drive, Suite 3517
Chicago, IL 60606
Telephone: (312) 675-4325
Fax: (312) 675-4326
tam@alloccomiller.com